# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| TOMMIE TUCKER<br>    La. DOC #515553<br>VS.<br><br>STATE OF LOUISIANA, ET AL. | CIVIL ACTION NO. 08-1295<br><br>SECTION P<br>JUDGE JAMES<br>MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Tommie Tucker, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 28 U.S.C. §636 on August 28, 2008. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (LDOC); he is currently incarcerated at the Elayn Hunt Correctional Center, St. Gabriel, Louisiana, but when he signed his complaint he was incarcerated at the East Carroll Detention Center (ECDC). He complained that persons at ECDC interfered with his "legal mail." He sued the State of Louisiana, LDOC Secretary James LeBlanc, ECDC Warden John Gunter, ECDC Mail Clerk Mary Brown, and Greg Lee, an inmate who is assigned to work in the ECDC Mail Room. In an amended complaint, he alleged fault only with regard to defendants Gunter, Brown, and Lee.

Plaintiff asked that the LDOC be ordered to promulgate rules prohibiting such activity, and, he prayed for compensatory damages in the amount of $100,000. Plaintiff also requested appointment of counsel. [rec. doc. 3] Plaintiff's request for appointed counsel was denied in an order dated January 22, 2009. [rec. doc. 12]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE**

as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

## *Statement of the Case*

Plaintiff is an inmate in the custody of the LDOC; during the spring and summer of 2008 he was incarcerated at the ECDC. According to plaintiff, on unspecified dates, persons in the ECDC mail room "opened" his "legal mail." He claimed that when he complained, he was called into the Warden's office and both Warden Gunter and Mail Clerk Mary Brown promised that it would never happen again. However, he claimed that notwithstanding that promise, subsequent envelopes addressed to him were opened. He also claimed that Inmate Greg Lee, on several occasions, questioned him about his mail; he also complained that Lee contacted plaintiff's sister. Plaintiff also claimed that money orders sent to inmates have been cashed in other towns.[1]

On January 22, 2009, plaintiff was ordered to amend his complaint to provide more specific information. [rec. doc. 11] Specifically, plaintiff was ordered to "... precisely state what EACH DEFENDANT did to violate HIS constitutional rights with respect to the circumstances alleged..." Additionally, he was ordered to "... state with specificity the nature and extent of the

---

[1] In support of his claim plaintiff submitted the following exhibits: (1) envelope addressed to him at ECDC from the Shreveport Police Department's Internal Affairs Bureau which plaintiff claims was received opened on April 9, 2008 [rec. doc. 1, p. 5]; (2) an envelope from the United States Department of the Treasury, Financial Management Service post-marked June 25, 2008 which plaintiff claims was opened upon receipt [rec. doc. 1, p. 6]; (3) an Administrative Remedy Request dated April 18, 2008 complaining as follows, "I received legal mail that had been open and resealed with tape; this wanton and blatant act and visissitude [sic] of legal mail of legal mail [sic] on 04.09.08 and legal mail of the past tantamount to [an] illicit act." [rec. doc. 1, p. 7]; (4) a second inmate grievance complaining of the incident on April 9, 2008 [rec. doc. 1, p. 8]; (5) an Inmate Request Form dated May 8, 2008 seeking information on missing or lost mail – a piece of certified mail mailed on April 18, 2008, which, according to plaintiff "... has not been located by post office since it originated here at ECDC..." [rec. doc. 1, p. 9]; (6) an inmate grievance complaining of receiving opened "legal" mail on June 30, 2008 [rec. doc. 1, p. 10]; and, (7) the written response to the grievance by Mary Brown dated July 9, 2008 stating, "I ... have been on vacation and just return back on the 7-7-08. I know of no legal mail that you have received since I been back. I'm sorry about the problem that you are having but I know not to open your legal mail and I pay your mail close attention." [rec. doc. 1, pp. 11-12]

2

prejudice he claims to have sustained as a result of the alleged constitutional violations." [rec. doc. 11]

On February 19, 2009, plaintiff submitted a Response to Memorandum order. In that pleading plaintiff identified only Warden Gunter, Mail Clerk Brown, and inmate Lee as defendants. [rec. doc. 15, p. 2] He claimed that these defendants "were in collusion" in "overruling" plaintiff's civil rights. [*Id*.] He then made the following specific allegations of fault: (1) On April 9, 2008, plaintiff's mail from the Shreveport Police Internal Affairs was opened before it was sent to plaintiff's dorm; (2) on April 18, 2008, an item of certified mail (which, according to plaintiff was an attempt to obtain legal aid and an administrative remedies grievance) "... was said to have never came into the mail room..."; however, plaintiff claims that the Post Office confirmed delivery "days earlier" but plaintiff did not receive a "confirmation card" from the Post Office; and, (3) on June 30, 2008, unnamed individuals opened and sent "legal mail" which contained personal and private information. [*Id*., pp. 2-3]

He alleged that these actions and others were not random isolated events, but rather part of the prison's policy "... to tamper with the mail in an illicit fashion..." in order "... to stop inmates in [their] attempt to report atrocious and illicit acts." [*Id*., p. 4]

With regard to the prejudice experienced as a result of the defendants' actions, plaintiff alleged that those actions "... block[ed] any attempts by plaintiff to get much needed medical attention..." for plaintiff's cancer. He claims to have lost three teeth, suffered a viral infection, and to have re-aggravated an injured ankle as a result of defendants' "illicit actions." [*Id*. , p. 4]

In addition to the foregoing, plaintiff provided the following additional exhibits: (1) a copy of the prison "call out list" used by the LDOC institutions [*Id*., p. 6]; (2) excerpts of the

3

Orientation manual provided to incoming inmates at Elayn Hunt Correctional Center [*Id.*, p. 8-11]; (3) excerpts from the administrative remedies procedures in effect at LDOC facilities [*Id.*, pp. 13-20].

Plaintiff also provided a list of "... eight ... reasons that ECDC tampered with the mail to hide such illicit acts..." Plaintiff reported the following acts: (1) inmates forced to sign papers which they were not allowed to read; (2) disabled inmates were forced to do manual labor off prison grounds for private citizens, and the security assigned to guard these inmates, some of whom were sex offenders, was insufficient; (3) four inmates tested positive for tuberculosis and one was allowed to work in the prison kitchen (plaintiff claims that he discovered the band-aid of one of these inmates in his meat loaf on April 7, 2008); (4) on July 5, 2008, some inmates became ill after they were served corn that was not fit for human consumption; (5) inmates are often "gassed," beaten, and plastic bags are placed over their heads; (6) an inmate was held at knife point by a guard on June 23, 2008; (7) three African American guards forced a white inmate to perform oral sex; (8) inmates' "... money being cashed in other towns..." According to plaintiff, this information has been, or will be reported to the Justice Department. [*Id.*, pp. 21-22]

### Law and Analysis

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440

(5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

The law accords judges not only the authority to dismiss a claim based on an indisputably

meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Plaintiff has set forth specific facts which he claims entitles him to relief. He was instructed on the applicable law and afforded an opportunity to cure deficiencies; he has filed an amended complaint along with attachments. It would appear that plaintiff has pled his best case and therefore further opportunities are unnecessary.

## *2. Sovereign Immunity*

Plaintiff named the State of Louisiana as a defendant in the caption of his complaint. He was then advised that his suit against the State was subject to dismissal on sovereign immunity grounds.[2] He omitted any reference to the State as a defendant in his amended complaint, and therefore, it must be assumed that he no longer seeks relief in this action against the State of Louisiana.

## *3. "State Actor"*

"In order to recover under § 1983, a plaintiff must prove (1) that he was deprived of a federally protected right, and (2) that the deprivation occurred under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). The

---

[2] Of course, as previously noted, to the extent that he maintains that Louisiana is liable in this action, such claims are subject to dismissal on immunity grounds. Sovereign immunity is a fundamental aspect of the sovereignty that the states enjoyed before the ratification of the Constitution and the Eleventh Amendment, and it was preserved intact by the Constitution. *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). The presupposition or concept of state sovereign immunity "has two parts: first, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 634, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999)(quoting *Hans v. Louisiana* 134 U.S. 1, 13, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). Although a state may waive its Eleventh Amendment sovereign immunity, the State of Louisiana has not done so. See *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360-61, 39 L.Ed.2d 662 (1974) (holding that a state's consent to suit against it in federal court must be expressed "unequivocally"). Thus, plaintiff's claims against the state of Louisiana are thus clearly subject to dismissal.

plaintiff may satisfy the "under color of state law" requirement by proving that the conduct causing the deprivation is "fairly attributable to the State" which means proof (1) that the deprivation was caused by the exercise of a state-created right or privilege, by a state-imposed rule of conduct, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may be fairly described as a state actor. *Landry v. A-Able Bonding, Inc.*, supra, at 203-04 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

Based on the pleadings, it is clear that the inmate Greg Lee is not a "state actor," and therefore, plaintiff's claims against Lee are subject to dismissal.

*4. Legal Mail*

Plaintiff implies that the defendants have interfered with his legal mail; however, as a factual matter, he has only claimed that the defendants opened and inspected his mail. In support of his claim he has provided envelopes from the Shreveport Police Department and the Treasury Department which he claims were already opened when delivered. When afforded the opportunity to flesh out these allegations, plaintiff provided 3 instances of "fault" on the part of the defendants: (1) the April 9, 2008 letter from the Shreveport Police Department; (2) an April 18, 2008 incident involving an item of certified mail[3]; and, (3) a June 30, 2008, incident involving a nondescript piece of mail that plaintiff characterized as "legal mail." [rec. doc. 15, pp. 2-3] Plaintiff has not established that the contents of these envelopes were "legal mail;" clearly, plaintiff has never alleged that these letters contained privileged correspondence from

---

[3] It is difficult to decipher the exact contours of this aspect of plaintiff's complaint. It appears that plaintiff addressed this letter to some person or agency outside the prison and that days later the United States Postal Service confirmed delivery. Nevertheless, plaintiff maintains only that the prison mail room had no record of the letter and that the Postal Service, notwithstanding its delivery confirmation, did not provide plaintiff with a return receipt.

plaintiff's attorney. Thus, plaintiff has not established that the defendants did anything more than open and inspect these envelopes for contraband, an activity which they are allowed by law to perform. See *Brewer v. Wilkinson*, 3 F.3d 816, 820-821 (5th Cir. 1993).

Further, to the extent that plaintiff maintains that the defendants' acts interfered with his right of access to the courts, he has also failed to state a claim. An inmate alleging denial of access to the courts must demonstrate an actual injury stemming from defendants' allegedly unconstitutional conduct. *Lewis v. Casey*, 518 U.S. 343, 351-54, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). To prevail on such a claim, a prisoner must show that his legal position has been prejudiced. See *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988). He must allege and ultimately demonstrate that he was prevented from raising a meritorious legal issue. *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir.1998). Plaintiff has not shown that his legal position has been prejudiced by the defendants' alleged interference with his legal mail. Instead, plaintiff's only claim of injury is related to an allegedly untreated illness. [rec. doc. 15, p. 4][4]

*5. Conclusion*

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties

---

[4] Plaintiff also lists a series of 8 "unlawful" acts alleged to have occurred at the prison. Other than the claim that he found a band aid in his meatloaf, these claims were not alleged to have directly involved plaintiff. Read liberally, it appears that plaintiff maintains that due to the defendants' interference, he was unable to raise these complaints before the proper authorities. However, plaintiff then concluded by stating that these complaints have been or will be reported to the Justice Department. [rec. doc. 15, pp. 21-22]

aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, February 26, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE